# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DALE E. OWENS, | ) 1:06cv0533 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**BACKGROUND**

Plaintiff Dale E. Owens ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 25, 2006, the Honorable Oliver W. Wanger reassigned the case to Magistrate Judge Lawrence J. O'Neill for all purposes. Due to the appointment of Judge O'Neill to the District Court, the case has been assigned to the undersigned.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed for supplemental security income on April 30, 2002, alleging disability a since July 11, 1983, due to a back problem and nervous condition. AR 108-116, 117-126. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 85-88, 91-94, 95. On June 23, 2005, ALJ Michael Haubner held a hearing. AR 276-301. He denied the claim on December 23, 2005. AR 23-30. On March 24, 2006, the Appeals Council denied review. AR 5-9.

Plaintiff filed a previous application for benefits that was denied on June 22, 2001. AR 26. ALJ Haubner found that Plaintiff demonstrated changed circumstances because of a change in his age category. AR 26.

Hearing Testimony

On June 23, 2005, ALJ Haubner held a hearing in Fresno, California. Plaintiff appeared with non-attorney representative Steven Whitfield. Vocational expert ("VE") Ken Ferra also appeared and testified. AR 276.

Plaintiff testified that he was born in 1954 and completed the eighth grade. AR 284. He last worked in 1981 or 1982. He last drank alcohol in 2002 and last used drugs in 1989. AR 286.

Plaintiff is homeless and estimates that he walks about seven miles a day. AR 286. He spends about three hours collecting cans, but otherwise spends his day walking around and staying in the sun. He visits family and friends every four to five days. AR 287. He does not cook, shop or read. He watches television for about an hour a day. AR 288.

Plaintiff last saw a doctor about a year ago. He has tried to get free medical care but has been unable to do so. AR 288-289. He last had psychiatric counseling about two years ago. AR 289.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that he was convicted of assault with a deadly weapon in 1995, possession of a controlled substance in 1991, and receiving stolen property in 1978. AR 289-290. He had two parole violations in 2000 and 2001. AR 290.

Plaintiff believed that he could be on his feet for 20 minutes before needing to sit for at least 45 minutes. He has hepatitis C, but is not taking medicine because he does not have a medical card. AR 290. He takes Tylenol for pain. AR 290-291.

He further testified that he has trouble concentrating and thought that he could concentrate on one thing for ten minutes at a time. AR 291.

For all the hypotheticals, the ALJ asked the VE to assume a person of Plaintiff's age, education and work background. AR 293. For the first hypothetical, the ALJ asked the VE to assume that this person could lift and carry 20 pounds occasionally, 10 pounds frequently, and should avoid frequent climbing, stooping and crouching. He should also avoid food preparation or handling. The VE testified that this person could perform the positions of cashier II, light and unskilled (183,000 in California), cleaner (20,000 in California), and agricultural grader (8,500 in California). AR 293-294.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 50 pounds occasionally, 25 pounds frequently, and could easily climbing, balance, stoop, kneel, crouch and crawl. This person could perform the above positions, as well as the medium jobs listed in the grids, less a 20 percent reduction AR 294-295.

For the third hypothetical, the ALJ asked the VE to assume a person who could lift and carry 20 pounds occasionally, 10 pounds frequently, and should avoid frequent bending, stooping and crouching. This person should also avoid extreme exposure to dust and fumes and could not use ladders. He needed a cane when negotiating inclines, and could stand and walk for three to four hours out of eight, and could sit for six hours out of eight. AR 295. This person could perform the world of unskilled sedentary work. AR 295.

For the fourth hypothetical, the ALJ asked the VE to assume that this person was moderately limited in the ability to understand, remember and carry out detailed instructions. This person could perform the positions of cleaner, agricultural grader and hand packer (47,000

3

in California, for all exertional levels, eroded by 80 percent, and 24,000 for the light level, eroded by 80 percent). AR 295-296.

For the fifth hypothetical, the ALJ asked the VE to add the first hypothetical to the fourth hypothetical. AR 296-297. This person could perform the positions of cleaner, agricultural grader and hand packer (24,000 for the light level, eroded by 80 percent).

For the sixth hypothetical, the ALJ asked the VE to assume that this person had symptoms that would interfere with concentration, persistence and pace in a common work setting. The VE responded that the question was vague and ambiguous. AR 297.

For the seventh hypothetical, based on Plaintiff's testimony, the ALJ asked the VE to assume that the person could lift and carry 40 to 50 pounds, could stand for 30 minutes at a time and then must sit for 45 minutes before standing another 20 minutes. This person can only concentrate in 10 minute increments. According to the VE, this person could not perform any work. AR 297.

Medical Record

On June 27, 2002, Plaintiff saw Norman Linder, M.D. for an orthopedic evaluation. Plaintiff reported that his back pain began in 1981 when he fell off a horse and fractured a bone in his back. He described his symptoms as constant, worse in the heat and worse at the end of the day. AR 193.

Upon examination, Plaintiff was able to get on and off of the examining table and walked with a normal gait. He used a cane, but was able to ambulate 30 feet without the cane and with normal gait. His straight leg raising was negative while sitting. He had tenderness to palpation in the lumbosacral paraspinals. Strength was 4/5 in the lower extremities. Dr. Linder diagnosed lumbosacral sprain/strain. Dr. Linder explained that subjectively, Plaintiff reported that he could sit up to half an hour, walk up to 60 feet, stand for seven minutes, had difficulty climbing up stairs, and could carry up to 10 pounds. Objectively, Plaintiff had tenderness to palpation in the lumbosacral paraspinals. AR 193-195.

Dr. Linder opined that Plaintiff could frequently lift up to 10 pounds, 20 pounds frequently, and could stand and/or walk for total of six hours in an eight hour day. He did not

need an assistive device.  He could sit for a total of six hours in an eight hour day, but should refrain from frequent climbing, stooping and crouching.  AR 195.  Dr. Linder further stated that he appeared to have limitations in visual acuity, but no gross limitations in speech or hearing.  AR 196.

Also on June 27, 2002, Plaintiff underwent x-rays of the lumbar spine.  The x-rays showed no definitive fracture, and the disc spaces were grossly normal in size and shape.

On October 17, 2002, State Agency physician George W. Bugg, M.D., completed a Physical Residual Functional Capacity Assessment.  He opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk for about six hours in an eight hour day, and could sit for about six hours in an eight hour day.  He could occasionally climb, balance, stoop, kneel, crouch and crawl.  He had no further limitations.  AR 198-205.

Plaintiff saw Shohreh Ghaemian, M.D., on November 17, 2002, for a comprehensive psychiatric evaluation.  Plaintiff appeared sleepy with reddened eyes.  His chief complaint was nervousness and he stated that he heard voices.  Dr. Ghaemian described Plaintiff as a poor historian who appeared uncooperative, with a good possibility of intentionally exaggerating his symptoms and providing inappropriate information.  He reported that he last used cocaine about a year ago and last used alcohol one month ago.  He was last incarcerated in 1990 but was currently on parole.  Plaintiff reported that he could take care of his physical hygiene and household chores, including taking the trash out, bringing in the mail, and watering the yard.  He reported that he has difficulty concentrating.  He further reported that he had never been married and had three children.  AR 210.  On mental status examination, Plaintiff made no eye contact throughout the conversation and talked with closed eyes.  His attitude was positive, but his behavior was uncooperative.  His thought process was logical and his mood depressed.  His past and recent memory were impaired, and his fund of knowledge was below average.  He could not perform calculations and his abstract thinking and judgment were impaired.  AR 208-212.

Dr. Ghaemian diagnosed polysubstance abuse/dependence, status of remission unknown, and malingering.  AR 212.  His overall functional level did not match the result of the mental status exam.  Dr. Ghaemian was unable to provide an opinion as to Plaintiff's abilities and

suggested that the next examiner review Plaintiff's prior history. AR 212. He also suggested testing to help clarify any areas of malingering. AR 212.

On December 31, 2002, State Agency physician Marina C. Vea, M.D., completed a Mental Residual Functional Capacity Assessment. She opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. She further opined that Plaintiff could understand and remember simple instructions, could sustain concentration, attention and pace for simple, repetitive tasks, can relate and interact, and can adapt to changes. AR 234-236.

In February 2003, State Agency physician Claire T. Steggall, M.D., noted that Plaintiff had not sought any treatment for mental or physical complaints. AR 240. Dr. Steggall opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. She further opined that he could understand and remember adequately to perform repetitive tasks, could sustain concentration and persistence for two hour intervals, could adequately interact with the public, peers and supervisors in basic work situations, and could adapt to normal work environment situations at the simple, repetitive task level. AR 257.

Dr. Steggall also completed a Physical Residual Functional Capacity Assessment in February 2003. She opined that Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, could stand and/or walk for about six hours in an eight hour day, and could sit for about six hours in an eight hour day. He could occasionally climb, balance, stoop, kneel, crouch and crawl. He had no further limitations. AR 259-266.

On May 19, 2004, Plaintiff saw John K. Zhang, Psy.D., for a psychological examination. Plaintiff reported that he had one son and had only performed three years, on and off, of light duty work. He reported that he last smoked marijuana about 16 or 18 years ago. Plaintiff lives with his mother and rides his bike around the block after he wakes up. He spends the rest of the morning watching television and visiting with his mother, who takes care of laundry, cooking and cleaning. Plaintiff was "unwilling or unable" to further elaborate on his daily activities. He reported hearing voices but did not provide much detail. Upon mental status examination, Plaintiff's mood was moderately depressed and he seemed to be functioning at a below-average

range with impaired concentration and memory.  His intelligence and memory testing was invalid because Plaintiff was "strongly suspected" to be malingering.  He diagnosed rule out, malingering, rule out, substance abuse, mood disorder, not otherwise specified, psychotic disorder, not otherwise specified, and antisocial personality disorder.  Dr. Zhang described Plaintiff as evasive and often untruthful.  However, he exhibited symptoms of depression and mild psychosis, which is likely to interfere with concentration, persistence and pace.  Dr. Zhang recommended that he receive a thorough substance abuse assessment/toxicology screening, as well as a psychiatric medication evaluation to manage his mood and psychotic symptoms.  AR 267-269.

On May 22, 2004, Plaintiff saw Emanuel Dozier, M.D., for an internal medicine evaluation.  He complained of chronic low back pain and chronic hepatitis C.  As to his back pain, he reported that he fell off a horse 15 years ago and hurt his back, and that his pain is a ten out of ten.  His hepatitis C causes chronic fatigue and total body pain.  Plaintiff lives with his parents and rests throughout the day.  He denied alcohol and drug use.  On physical examination, ambulation and gait were normal and he was able to sit without discomfort.  There was mild local tenderness in the right and left lower quadrants of his abdomen.  There was also mild local tenderness over the area of the twelfth thoracic vertebra with a 3 x 2 nodular mass that felt lipomatus on the right side.  There were also paravertebral muscle spasms and loss of normal cervical-lordotic curves.  Plaintiff had positive straight leg raising on the left in the supine position and negative in the sitting position.  Motor strength was 5/5 in the upper and lower extremities.

Dr. Dozier diagnosed chronic mechanical low back pain and chronic hepatitis C without portal hypertension of encephalopathy.  Dr. Dozier opined that Plaintiff could not frequently bend, stoop or crouch.  He had to avoid temperature extremes of heat, cold, dust and fumes.  He would also have problems climbing ladders or incline planes without the use of a cane.  He could lift and carry 10 pounds occasionally and frequently, stand and walk for two to four hours in an eight hour day, and sit for six hours in an eight hour day.  Dr. Dozier recommended that Plaintiff

be reevaluated after he established treatment with a physician and had treatment for his illnesses. AR 270-274.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of malingering, polysubstance abuse/dependence, rule out recurrent abuse, chronic mechanical low back pain and a history of hepatitis C. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, and could occasionally crouch, climb and stoop. Plaintiff had to avoid food handling and preparation, and was moderately limited in his ability to understand, remember and carry out detailed instructions. The ALJ further found that Plaintiff's subjective complaints and alleged functional limitations were not as severe as alleged. Plaintiff could perform light work, and his non-exertional limitations did not significantly compromise the range of work he could perform. Using the grids as a framework and relying on the VE testimony, the ALJ concluded that Plaintiff was not disabled. AR 29-30.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability;(2) has an impairment or a combination of impairments that is considered "severe" (malingering, polysubstance abuse/dependence, rule out recurrent abuse, chronic mechanical low back pain and a history of hepatitis C) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a broad range of light work. AR 29-30.

Here, Plaintiff argues that (1) the ALJ improperly assessed his RFC; (2) the credibility finding was incorrect; (3) the hypothetical given to the VE was flawed because Plaintiff testified he was illiterate; and (4) the ALJ's decision is flawed because interrogatories propounded by Plaintiff to the State Agency physicians were not answered.

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

9

**DISCUSSION**

A.   RFC Finding

In Plaintiff's first argument, he contends that the ALJ's RFC finding is not supported by the medical evidence.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. In assessing a claimant's RFC, the ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(I), 416.913(c), 416.927(f)(2)(I).

Here, the ALJ thoroughly reviewed the medical evidence in formulating Plaintiff's RFC. Although Dr. Dozier's consultive examination was more current, the ALJ chose to give greater weight to the consultive examination of Dr. Linder. He determined that Dr. Dozier's finding of a sedentary RFC was supported by tests that could be subjectively manipulated. AR 28. For example, Plaintiff had positive straight leg raising on the left in a supine position, but negative straight leg raising while sitting. The ALJ found this to be indicative of exaggerating or malingering. AR 28. The ALJ is entitled to draw inferences logically flowing from the evidence. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Given that the ALJ reasonably determined that Plaintiff's credibility was poor, he logically determined that Dr. Dozier's opinion, which was heavily dependent on subjective testing, was deserving of little weight. *See eg.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (failure to give maximum or consistent effort reflect lack of reliability in results and lack of credibility). The ALJ therefore set forth specific and legitimate reasons for rejecting Dr. Dozier's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989).

As for Dr. Linder's opinion, the ALJ found that his opinion was more consistent with the overall objective record. AR 28. Indeed, a consultive examiner's opinion can constitute substantial evidence when it rests on independent clinical findings, as it did here. *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The only objective finding on examination was tenderness to palpation in the lumbosacral paraspinals.  AR 193-195.  Despite his subjective complaints, Plaintiff was able to get on and off of the examining table and walked with a normal gait.  His straight leg raising was negative while sitting.  Although Plaintiff used a cane, Dr. Linder determined that he did not need one.  He was able to ambulate 30 feet without the cane and with normal gait.  The ALJ also explained that Dr. Linder was board-certified, while Dr. Dozier was not.  AR 28.  Finally, the ALJ explained that his opinion was consistent with the opinions of the State Agency physicians.  AR 28, 259-266.  The findings of non-treating, non-examining physicians can constitute substantial evidence as long as they are supported by other evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

      As to Plaintiff's mental RFC, the ALJ determined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions.  AR 28.  In making this finding, he relied on the opinions of the State Agency physicians.  He explained that although Dr. Zhang indicated that Plaintiff would likely have problems with concentration, persistence and pace, Dr. Zhang "strongly suspected" that Plaintiff was malingering and described him as evasive and often untruthful.  AR 267-269.  Similarly, the ALJ noted that Dr. Ghaemian diagnosed Plaintiff as malingering and stated that his overall functional level did not match the result of the mental status exam.  AR 28, 212.  In light of the indications that Plaintiff was malingering and/or exaggerating during his two consultive psychological examinations, the ALJ's adoption of the State Agency physicians' opinions was supported by substantial evidence.  Although the opinion of a non-treating, non-examining, non-treating physician cannot be relied on alone to reject opinions of treating or examining sources, the ALJ did not rely *solely* on their opinions.  There was ample evidence in the record of Plaintiff's questionable reputation for truthfulness, by way of his daily activities and examining source opinions.  The ALJ relied on this evidence, as well as the opinions of the State Agency physicians, in determining Plaintiff's mental RFC.  *Magallanes*, 881 F.2d at 752.

      Plaintiff's claim is without merit and must be denied.

B.   Plaintiff's Credibility

Next, Plaintiff contends that the ALJ violated *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). He provides no further argument or explanation.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)). Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

In his decision, the ALJ first determined that Plaintiff had impairments that could reasonably be expected to produce some of the symptoms he alleges. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). He then continued, "but the degree of limitation he alleges is not supported by the objective medical evidence and is not entirely credible when evaluated under Social Security Ruling 96-7p." AR 27.

The ALJ then explained his reasoning behind his decision. He first noted that in the prior hearing decision, the ALJ found his credibility to be poor, "as his statements to the consultive internist and psychiatrist were contradictory." AR 27. Similarly, the ALJ explained that Dr. Zhang and Dr. Ghaemian believed that Plaintiff was malingering. AR 27. The ALJ may use

1  "ordinary techniques" in addressing credibility. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792
2  (9th Cir. 1997), and may make inferences "logically flowing from the evidence." *Macri v.*
3  *Chater*, 93 F.3d 540, 544 (9th Cir. 1996).  Certainly, the ALJ is entitled to rely on instances
4  where Plaintiff's veracity was called into question. *See eg.*, *Osenbrock v. Apfel*, 240 F.3d 1157,
5  1166 (9th Cir. 2001) (disability not established where, among other factors, examination findings
6  suggested a functional component to the claimant's pain and the evaluator indicated that there
7  were inconsistent findings which suggested that the plaintiff was malingering).

8      The ALJ then set forth additional reasons as to why he questioned Plaintiff's credibility.
9  Plaintiff had a "dismal work history," a criminal history involving crimes of moral turpitude, and
10 gave inconsistent medical histories.  AR 27.  As to his daily activities, the ALJ noted that he had
11 a "wide range" of activities of daily living, such as walking two to three hours a day, visiting
12 friends every four days, shopping, cooking, reading and watching television for one hour at a
13 time.  AR 27, 285-290.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  In dismissing
14 Plaintiff's account of his limitations, the ALJ stated that Plaintiff's treatment history was not
15 consistent with the general lack of treatment.  AR 27.  *Flaten v. Sec'y of HHS*, 44 F.3d 1453,
16 1464 (9th Cir. 1995).

17     Based on the above, the ALJ set forth sufficiently specific information to allow this Court
18 to determine that he did not arbitrarily dismiss Plaintiff's subjective complaints.  "Where, as
19 here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ... and
20 those findings are supported by substantial evidence in the record, our role is not to second-guess
21 that decision." *Fair,* 885 F.2d at 603.  Plaintiff's claim is without merit and must be denied.

22 C.    <u>Hypothetical Question</u>

23     Plaintiff argues that the ALJ used an incorrect assumption in his hypothetical questions.
24 Plaintiff explains that he is illiterate and could not read or write, and that the ALJ should have
25 used this as the educational assumption rather then assuming that Plaintiff had an eighth grade
26 education.

27     "Hypothetical questions posed to the vocational expert must set out all the limitations and
28 restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

13

The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey*, 849 F.2d at 422.

In setting out the assumptions for the hypothetical question, the ALJ asked the VE to assume the same education as Plaintiff. AR 293. When asked by the ALJ if he completed the eighth grade, Plaintiff replied, "Yes." AR 284. Contrary to Plaintiff's contention, he did not testify that he was illiterate. In fact, on his disability report, Plaintiff indicated that he could read English and write more than his name in English. AR 117.

Plaintiff's argument is without merit and must be denied.

D.   <u>Interrogatories</u>

Finally, Plaintiff characterizes the ALJ's decision as "constitutionally flawed" because the State Agency physicians did not answer the interrogatories he propounded.

A review of the record indicates that Plaintiff submitted interrogatories to State Agency physicians Bugg and Vea. On June 27, 2005, two days after the hearing, the ALJ indicated that he had reviewed the interrogatories and forwarded them, without including questions that he found to be irrelevant or vague an ambiguous, to Drs. Bugg and Vea. AR 167-179. On September 30, 2005, an analyst noted that the doctors did not have all information necessary to answer the questions. AR 180. In November 2005, another analyst noted that she told Mr. Whitfield that they sent the interrogatories twice, without response. Mr. Whitfield suggested that the send the interrogatories again, but then stated that he would wait for the responses. AR 182.

In his decision, the ALJ explained that Mr. Whitfield submitted interrogatories to Drs. Bugg and Vea, and that he made multiple unsuccessful attempts to get them answered. AR 26. He received no responses, however, and moved forward with his decision. AR 26.

A claimant in a disability hearing is not entitled to unlimited cross-examination, but is entitled to such cross-examination as may be required for a full and true disclosure of the facts. *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988); *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir.1983). Similarly, interrogatories are not authorized, but may be used at the discretion of

the ALJ. 20 C.F.R. § 498.207(b); *Copeland*, 861 F.2d at 539 (ALJ did not abuse discretion in limiting number of interrogatories because ALJ has discretion to decide when cross-examination as is warranted).

Here, then, Plaintiff had no absolute right to propound interrogatories. The ALJ allowed him to do so and made numerous unavailing attempts to get answers. He was unable to obtain responses and moved on to his determination, likely concluding that responses were not necessary and would not have changed his decision. Indeed, there was nothing ambiguous or inadequate about the record before the ALJ. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001) (holding that ALJs have a duty fully and fairly to develop the record only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence).

Plaintiff cannot claim error when the ALJ makes repeated attempts to obtain answers to interrogatories in a situation where interrogatories are not generally used and there is substantial evidence to support the decision.

Plaintiff's argument is meritless and must be denied.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Dale E. Owens.

IT IS SO ORDERED.

Dated:   **April 10, 2007**              /s/ **Dennis L. Beck**
                                                 UNITED STATES MAGISTRATE JUDGE